JOSEPH W. COTCHETT (36324)
STEVEN N. WILLIAMS (175489)
**COTCHETT, PITRE & McCARTHY**
840 MALCOLM ROAD
BURLINGAME, CA 94010
650-697-6000
650-697-0577

*Additional counsel set forth on signature page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ------------------------------------- x | **SACV07 0170 AG** (ANX) |
| Abramcyk Real Estate Company, Inc., Individually And On Behalf of All Others Similarly Situated, : | Civil Action No.: |
| Plaintiff, : | **FEDERAL SECURITIES CLASS ACTION COMPLAINT** |
| -against- : | |
| NEW CENTURY FINANCIAL CORPORATION, ROBERT K. COLE, PATTI M. DODGE, BRAD MORRICE, MICHAEL M. SACHS, MARILYN A. ALEXANDER, DONALD LANGE, and RICHARD ZONA, : | **JURY TRIAL DEMANDED** |
| Defendants. : | |
| ------------------------------------- x | |

# TABLE OF CONTENTS

| | Page(s) |
|---|---|
| NATURE OF THE ACTION | 2 |
| JURISDICTION AND VENUE | 3 |
| PARTIES | 4 |
|     Plaintiffs | 4 |
|     Defendants | 4 |
| SUBSTANTIVE ALLEGATIONS | 7 |
|     Defendants' False and Misleading Statements Issued during the Class Period | 7 |
|     The Truth Is Revealed | 12 |
| CLASS ACTION ALLEGATIONS | 13 |
| COUNT I<br>    Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants | 16 |
| COUNT II<br>    Violation of Section 20(a) of the Exchange Act Against the Individual Defendants | 17 |
| JURY TRIAL DEMANDED | 18 |

Plaintiff Abramcyk Real Estate Company, Inc. ("Plaintiff"), individually and on behalf of all other persons similarly situated, by its undersigned attorneys, for its Class Action Complaint against Defendants, alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States and . Securities Exchange Commission ("SEC") filings, wire and press releases published by and regarding New Century Financial Corporation ("New Century" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the internet, as follows:

## NATURE OF THE ACTION

1.      This is a securities fraud class action on behalf of investors who purchased New Century securities, including its common stock, preferred stock, and call options, or who wrote put options, between May 4, 2006 and February 7, 2007, both dates inclusive (the "Class Period") and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Defendant New Century is a real estate investment trust and mortgage finance company. The Company operates nationwide through its mortgage origination subsidiaries, New Century Finance Corporation and Home123 Corporation.

3.      Throughout the Class Period, as set forth herein, Defendants misrepresented the Company's financial results and conditions by issuing earnings announcements and filing 10-Q quarterly reports with the SEC containing financial statements which materially overstated

earnings, understated anticipated loan repurchase losses, failed to establish a sufficient loan repurchase loss reserve, and violated Generally Accepted Accounting Principles ("GAAP").

4.    Specifically, Defendants: (1) failed to include the expected discount upon disposition of loans when estimating its allowance for loan repurchase losses; and (2) failed to apply the proper methodology for estimating the volume of anticipated repurchase claims for calculating the repurchase reserve calculation by refusing to properly consider the increasing volume of repurchase requests.

5.    On February 7, 2007, after the market closed, Defendants issued a press release admitting that they had failed to properly apply GAAP as outlined herein, withdrawing reliance on the previously-filed 10-Q quarterly reports for the first three quarters of 2006, and conceding that they would have to materially restate their financials for those periods to reflect the proper accounting for loan repurchase losses under GAAP.

6.    When the market reopened the following day, shareholders reacted sharply to this disclosure, sending New Century shares down $10.92 to $19.24 or 33%, on heavy volume, and wiping out over $550 million in shareholder equity in a single day.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under and pursuant to Sections 10(b), and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9.    Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). New Century maintains businesses in this District and many of the acts

and practices complained of herein occurred in substantial part in this District. In addition, the Company's principal executive offices are in this District.

10.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

### Plaintiff

11.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of New Century at artificially inflated prices during the Class Period and has been damaged thereby.

### Defendants

12.     Defendant New Century is a Delaware corporation which maintains its principal executive office at 18400 Von Karman, Suite 1000, Irvine, CA. The aggregate number of shares of New Century common stock outstanding as of February 2007 was approximately 55.47 million. New Century's common stock is actively traded on the New York Stock Exchange ("NYSE") under the ticker symbol "NEW."

13.     Defendant Robert K. Cole ("Cole") was the Company's Chairman of the Board throughout the Class Period, and served as its Chief Executive Officer from the beginning of the Class Period until late June or early July, 2006.

14.     Defendant Patti M. Dodge ("Dodge") was an Executive Vice President of the Company throughout the Class Period and served as the Company's Chief Financial Officer from the beginning of the Class Period until November 15, 2006, when she took charge of the

Company's Investor Relations department.

15.    Defendant Brad Morrice ("Morrice") was the Company's President throughout the Class Period, and served as its Chief Operating Officer from the beginning of the Class Period until late June or early July, 2006, when he was promoted to Chief Executive Officer.

16.    Defendants Michael M. Sachs ("Sachs") was a Director of New Century throughout the Class Period and the Chair of its Audit Committee. New Century's Audit Committee charter required him to "meet with management and the outside auditor to discuss the Company's interim financial results to be included in each of the Company's Quarterly Reports on Form 10-Q...prior to the filing of each Quarterly Report" and to "review the type and presentation of information to be included in the Company's earnings press releases..., discuss the earnings press releases and review any financial information and earnings guidance provided by the Company to analysts and rating agencies."

17.    Defendant Marilyn A. Alexander ("Alexander") was a Director of New Century throughout the Class Period and a member of its Audit Committee. New Century's Audit Committee charter required her to "meet with management and the outside auditor to discuss the Company's interim financial results to be included in each of the Company's Quarterly Reports on Form 10-Q...prior to the filing of each Quarterly Report" and to "review the type and presentation of information to be included in the Company's earnings press releases..., discuss the earnings press releases and review any financial information and earnings guidance provided by the Company to analysts and rating agencies."

18.    Defendant Donald Lange ("Lange") was a Director of New Century throughout the Class Period and a member of its Audit Committee. New Century's Audit Committee charter required him to "meet with management and the outside auditor to discuss the Company's

interim financial results to be included in each of the Company's Quarterly Reports on Form 10-Q...prior to the filing of each Quarterly Report" and to "review the type and presentation of information to be included in the Company's earnings press releases..., discuss the earnings press releases and review any financial information and earnings guidance provided by the Company to analysts and rating agencies."

19.     Defendant Richard Zona ("Zona") was a Director of New Century throughout the Class Period and a member of its Audit Committee. New Century's Audit Committee charter required him to "meet with management and the outside auditor to discuss the Company's interim financial results to be included in each of the Company's Quarterly Reports on Form 10-Q...prior to the filing of each Quarterly Report" and to "review the type and presentation of information to be included in the Company's earnings press releases..., discuss the earnings press releases and review any financial information and earnings guidance provided by the Company to analysts and rating agencies."

20.     Defendants Cole, Dodge, Morrice, Sachs, Alexander, Lange and Zona are referred to herein as the "Individual Defendants." During the Class Period, the Individual Defendants, as senior executive officers of New Century or members of its Audit Committee, were all privy to non-public information regarding the Company's loan repurchase losses, loan repurchase loss reserves, and volume of loan repurchase requests, from their compilation, analysis and review of such figures for incorporation into the interim financial statements for the first, second and third quarters of 2006, from access to internal corporate documents referencing such information, conversations with other corporate officers and employees, attendance at management and Audit Committee meetings, performance of duties under New Century's Audit Committee charter, and via other reports and information provided to them in connection therewith. Because of their

possession of and access to such information, the Individual Defendants knew that the representations alleged herein were false and misleading, and/or were deliberately reckless with respect to the truth or falsity of such statements.

21.    As officers and/or directors with specific duties under New Century's Audit Committee charter and controlling persons of a publicly-held company, registered with the SEC and traded on the NYSE, the Individual Defendants each had a duty to disseminate accurate and truthful information with respect to the Company's financial condition, liabilities, interests, earnings and present and future business prospects, and to correct any previously issued statements that were erroneous.

22.    The Individual Defendants, because of their positions as officers and/or directors of the Company with specific duties under New Century's Audit Committee charter, were able to and did control the contents of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public filings and press releases detailed herein and is personally liable for the misrepresentations and omissions contained therein.

## SUBSTANTIVE ALLEGATIONS

### Defendants' False and Misleading Statements Issued During the Class Period

23.    On May 4, 2006, the Company issued a press release announcing financial results for the first quarter of 2006. The Company reported earnings per share of $1.79, which Defendant Cole characterized as "strong."

24.    The representations set forth in Paragraph 23 were materially false and misleading because:

(1)    Defendants overstated reported net income and earnings per share by failing to adequately reserve for loan repurchase losses;

(2)    Defendants failed to disclose that they were experiencing a substantial increase in the pace of loan repurchase requests, which would adversely effect operating results; and

(3)    Defendants failed to disclose that the reported financial statements did not comply with GAAP due to their failure to properly reserve for loan repurchase losses.

25.    On May 10, 2006, the Company filed its 10-Q quarterly report with the SEC for the first quarter of 2006. The 10-Q report reiterated the financial results contained in the May 4, 2006 press release, and stated that the Company's provision for loan repurchase losses during the quarter was $3,202,000. The 10-Q stated:

> In order to estimate an appropriate allowance for repurchase losses we use historic experience, taking into consideration factors such as premiums received on and volume of recent whole loan sales and the general secondary market and general economic environment. As of March 31, 2006 and December 31, 2005, the repurchase allowance totaled $8.9 million and $7.0 million, respectively, and is included in accounts payable and accrued liabilities on our condensed consolidated balance sheet. We believe the allowance for repurchase losses is adequate as of March 31, 2006.

The 10-Q was signed by Defendants Cole, Dodge, and Morrice, who certified that the financial statements contained therein were prepared "in accordance with accounting principles generally accepted in the United States of America for interim financial information."

26.    Defendants Cole, Dodge and Morrice each issued a certification to the accuracy of this information under Section 302 of the Sarbanes-Oxley Act of 2002 representing, *inter alia,* that:

(1)    they had "reviewed the quarterly report";

(2)    the "report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report";

(3)    the "financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report"; and

(4)    they had designed and implemented disclosure controls sufficient to ensure that material information would be known to them.

Defendants Cole, Dodge and Morrice each also issued a certification to the accuracy of this information under Section 906 of the Sarbanes-Oxley Act of 2002 representing, *inter alia*, that:

"The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.    The representations set forth in Paragraphs 25-26 were materially false and misleading because:

(1)    Defendants overstated reported net income and earnings per share by failing to adequately reserve for loan repurchase losses;

(2)    Defendants' estimate of repurchase losses was not "adequate" or "appropriate";

(3)    Defendants' estimate of repurchase losses did not reflect the fact that New Century was experiencing a substantial increase in the pace of loan repurchase requests;

(4)    Defendants' financial statements did not comply with GAAP due to their failure to properly reserve for loan repurchase losses; and

(5)    the 10-Q did not "fairly present[], in all material respects, the financial condition and results of operations of the Company.";

28.    On August 3, 2006, the Company issued a press release announcing financial results for the second quarter of 2006. The press release highlighted earnings per share of $1.81, which Defendant Morrice (now CEO) touted as "evidence of the strength and stability of our franchise."

29. The representations set forth in Paragraph 28 were materially false and misleading for the reasons set forth in Paragraph 24, and because Defendants failed to disclose that they improperly excluded the expected discount upon disposition of loans when estimating the provision for loan repurchase losses, in violation of Statement of Financial Accounting Standards No. 140.

30. On August 9, 2006, the Company filed its 10-Q quarterly report with the SEC for the second quarter of 2006. The 10-Q report reiterated the financial results contained in the August 3, 2006 press release, and stated that the Company's provision for loan repurchase losses during the quarter was $5,701,000. The 10-Q stated:

> In order to estimate an appropriate allowance for repurchase losses we use historic experience, taking into consideration factors such as premiums received on and volume of recent whole loan sales and the general secondary market and general economic environment. As of June 30, 2006 and December 31, 2005, the repurchase allowance totaled $14.4 million and $7.0 million, respectively, and is included in accounts payable and accrued liabilities on our condensed consolidated balance sheet. We believe the allowance for repurchase losses is adequate as of June 30, 2006.

The 10-Q was signed by Defendants Cole, Dodge, and Morrice, who certified that the financial statements contained therein were prepared "in accordance with accounting principles generally accepted in the United States of America for interim financial information."

31. Defendants Cole, Dodge and Morrice each issued certifications to the accuracy of this information under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 in the form set forth in Paragraph 26.

32. The representations alleged in Paragraphs 30-31 were materially false and misleading for the reasons set forth in Paragraph 27, and because Defendants failed to disclose that they improperly excluded the expected discount upon disposition of loans when estimating

the provision for loan repurchase losses, in violation of Statement of Financial Accounting

Standards No. 140.

33.     On November 2, 2006, the Company issued a press release announcing financial

results for the third quarter of 2006. The Company reported earnings per share of $1.12, which

Defendant Morrice characterized as "solid."

34.     The representations set forth in Paragraph 33 were materially false and misleading

for the reasons set forth in Paragraph 24, and because Defendants failed to disclose that they

improperly excluded the expected discount upon disposition of loans when estimating the

provision for loan repurchase losses, in violation of Statement of Financial Accounting Standards

No. 140.

35.     On November 9, 2006, the Company filed its 10-Q quarterly report with the SEC

for the third quarter of 2006. The 10-Q report reiterated the financial results contained in the

November 2, 2006 press release, and stated that the Company's provision for loan repurchase

losses during the quarter was $5,261,000. The 10-Q stated:

> In order to estimate an appropriate allowance for repurchase losses we use historic
> experience, taking into consideration factors such as premiums received on and
> volume of recent whole loan sales and the general secondary market and general
> economic environment. As of September 30, 2006 and December 31, 2005, the
> repurchase allowance totaled $13.9 million and $7.0 million, respectively, and is
> included in accounts payable and accrued liabilities on our condensed
> consolidated balance sheet. We believe the allowance for repurchase losses is
> adequate as of September 30, 2006.

The 10-Q was signed by Defendants Cole, Dodge, and Morrice, who certified that the financial

statements contained therein were prepared "in accordance with accounting principles

generally accepted in the United States of America for interim financial information."

36.   Defendants Cole, Dodge and Morrice each issued certifications to the accuracy of this information under Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 in the form set forth in Paragraph 26.

37.   The representations alleged in Paragraphs 35-36 were materially false and misleading for the reasons set forth in Paragraph 27, and because Defendants failed to disclose that they improperly excluded the expected discount upon disposition of loans when estimating the provision for loan repurchase losses, in violation of Statement of Financial Accounting Standards No. 140.

### The Truth Is Revealed

38.   At the end of the Class Period on February 7, 2006, after the market closed, the Company issued a press release admitting that its previously-reported financial results for the first three quarters of 2006 were false, conceding that it had failed to properly apply GAAP by improperly reserving for loan repurchase losses as outlined above, and withdrawing reliance on the previously-filed 10-Q quarterly reports for the first three quarters of 2006:

> New Century Financial Corporation (NYSE: NEW - News), a real estate investment trust (REIT), today announced that it will restate its consolidated financial results for the quarters ended March 31, June 30 and September 30, 2006 to correct errors the company discovered in its application of generally accepted accounting principles regarding the company's allowance for loan repurchase losses.
>
> The company establishes an allowance for repurchase losses on loans sold, which is a reserve for expenses and losses that may be incurred by the company due to the potential repurchase of loans resulting from early-payment defaults by the underlying borrowers or based on alleged violations of representations and warranties in connection with the sale of these loans. When the company repurchases loans, it adds the repurchased loans to its balance sheet as mortgage loans held for sale at their estimated fair values, and reduces the repurchase reserve by the amount the repurchase prices exceed the fair values. During the second and third quarters of 2006, the company's accounting policies incorrectly applied Statement of Financial Accounting Standards No. 140 - Accounting for

Transfers and Servicing of Financial Assets and Extinguishment of Liabilities. Specifically, the company did not include the expected discount upon disposition of loans when estimating its allowance for loan repurchase losses.

In addition, the company's methodology for estimating the volume of repurchase claims to be included in the repurchase reserve calculation did not properly consider, in each of the first three quarters of 2006, the growing volume of repurchase claims outstanding that resulted from the increasing pace of repurchase requests that occurred in 2006, compounded by the increasing length of time between the whole loan sales and the receipt and processing of the repurchase request.

****

Although the company's full review of the legal, accounting and tax impact of the restatements is ongoing, at this time the company expects that, once restated, its net earnings for each of the first three quarters of 2006 will be reduced.

In light of the pending restatements, the company's previously filed condensed consolidated financial statements for the quarters ended March 31, June 30 and September 30, 2006 and all earnings-related press releases for those periods should no longer be relied upon. The company expects to file amended Quarterly Reports on Form 10-Q for the quarters ended March 31, June 30 and September 30, 2006 as soon as practicable, with a goal to file by March 1, 2007. The company also expects that the errors leading to these restatements constitute material weaknesses in its internal control over financial reporting for the year ended December 31, 2006. However, the company has taken significant steps to remediate these weaknesses and anticipates remediating them as soon as practicable.

39.     When the market opened the following day, New Century's stock crashed as investors reacted to this disclosure. Shares closed February 8, 2006 down $10.92 to $19.24, a loss of 33%, on extremely heavy volume.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who purchased New Century securities, including its common stock, preferred stock, and call options, or who wrote put options, between May 4, 2006 and February 7, 2007, both dates inclusive, and who were

damaged thereby (the "Class"). Excluded from the Class are the Defendants, the Company's officers and directors, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any other entity in which any of the defendants has a controlling interest or of which the Company is a parent or subsidiary.

41.    The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company had more than 55 million shares of its common stock outstanding, which were actively traded on the NYSE. While the exact number of Class Members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are thousands of members of the Class who traded Company common stock during the Class Period.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

- Whether Defendants misrepresented the Company's financial results for the first three quarters of 2006;

- Whether Defendants issued false certifications under the Sarbanes-Oxley Act of 2002 for the Company's 10-Q quarterly reports for the first three quarters of 2006;

- Whether Defendants acted knowingly or recklessly in making materially false and misleading statements and omissions during the Class Period;

- Whether the market prices of the Company's securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- Whether the members of the Class have sustained damages and, if so, the proper measure of damages.

43.    Plaintiff's claims are typical of the claims of the members of the Class as Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in

violation of federal laws as complained of herein.

44.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of this Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants issued materially false and misleading statements and failed to disclose material facts during the Class Period;

- the misrepresentations were material;

- New Century's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

- as a regulated issuer, New Century filed periodic public reports with the SEC and the NYSE;

- New Century regularly communicated with investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- New Century was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace;

• the materially false and misleading representations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

• Plaintiff and members of the Class purchased their Company stock between the time Defendants made the materially false and misleading representations and the time the true facts were disclosed, without knowledge of the truth.

47.    Based upon the foregoing, Plaintiff and members of the Class are entitled to a presumption of reliance upon the integrity of the market price for the Company's securities.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### And rule 10b-5 Promulgated Thereunder
### Against All Defendants

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.    During the Class Period, Defendants materially misled the investing public, thereby artificially inflating the price of New Century's common stock, preferred stock and call options (and deflating the price of New Century's put options) by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company; its business and operations, as alleged herein.

50.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made a series of materially false and misleading statements about New

Century's financial results for the first three quarters of 2006, the accuracy of reported financial results and the Company's compliance with GAAP, and repurchase volume trends that adversely affected their business. These material misstatements and omissions had the effect of creating in the market an unrealistically positive assessment of New Century, thus causing the Company's stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

51.    Plaintiff and the Class would not have purchased New Century securities at the prices they paid, or at all (or in the case of put writers, would not have written New Century puts at the prices received, if at all) if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

52.    When the truth about the Company's improper accounting practices was finally disclosed, New Century stock declined significantly as detailed herein.

53.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of New Century securities (or writing of New Century puts) during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54.    Plaintiff repeats and realleges each and every allegation contained above as fully set forth herein.

55.    The Individual Defendants acted as controlling persons of New Century within

the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of New Century, the Individual Defendants had the power and authority to cause New Century to engage in the wrongful conduct complained of herein. By reach of such conduct the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

a)    A determination that this action is a proper class action, designating Plaintiff as Lead Plaintiff, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiff's counsel as lead counsel;

b)    An award of compensatory damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c)    An awarding of the reasonable costs and expenses incurred by Plaintiff and the Class in this action, including counsel fees and expert fees, and

d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: February 9, 2007

COTCHETT, PITRE & McCARTHY

By _____
    STEVEN N. WILLIAMS

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
Marc I. Gross (*pro hac vice application to be
submitted*)
Fei-Lu Qian(*pro hac vice application to be
submitted*)
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
Patrick V. Dahlstrom (*pro hac vice application to
be submitted*)
Joshua B. Silverman (*pro hac vice application to be
submitted*)
One North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: 312-377-1181
Facsimile: 312-377-1184

**JAROSLAWICZ & JAROS**
David Jaroslawicz (*pro hac vice application to be
submitted*)
150 Williams Street – 19th Floor
New York, NY 10038
Telephone: 212-227-2780

**Attorneys for Plaintiff**

# PLAINTIFF'S SWORN CERTIFICATION

I, Israel Abramcyk, as President of Abramcyk Real Estate Company, Inc., a New York corporation, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.    I have reviewed the complaint filed herewith in the captioned action (the "Complaint"), and have authorized the filing thereof.

2.    I am willing to serve as representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial, if necessary.

3.    Abramcyk Real Estate Company, Inc. purchased 1500 shares of New Century Financial Corp. (NEW) on January 3, 2007 at a price of $31.70 per share.

4.    Abramcyk Real Estate Company, Inc. did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the Securities Exchange Act of 1934.

5.    During the three year period preceding the date of my signing this Certification, Abramcyk Real Estate Company, Inc. has not sought to serve, nor has it served, as representative party on behalf of a class in any private action arising under the Securities Exchange Act of 1934.

6.    Abramcyk Real Estate Company, Inc. will not accept any payment for serving as representative party on behalf of the Class beyond its pro rata share of any possible recovery, except for an award, as ordered or approved by the court, for reasonable costs and expenses (including lost wages) directly relating to its representation of the Class.

Signed under penalties of perjury this 8th day of February, 2007

Abramcyk Real Estate Company, Inc.

By: _____
      Israel Abramcyk
      President